

FILED
JUL 2 1 2015
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　　　Plaintiff,<br>vs.<br>SERGEYI BAZAR,<br>　　　　　　　　　　Defendant. | Case No.: 15-CR-499-BEN<br><br>**ORDER** |

Before this Court are seven discovery motions filed by the Parties. The Court will address each motion in turn.

**I.　Defendant's Motion to Suppress Defendant's Confession**

Defendant moves to suppress his confession, made beyond six hours after his arrest but before presentment, because he argues the Government unreasonably delayed in bringing him before a judge. (Doc. No. 32.)

A. <u>Six Hour Safe Harbor</u>

A confession made within six hours after arrest is not inadmissible solely because of delay in bringing such person before a judge. 18 U.S.C. § 3501(c). Where a confession is made outside of the six hour period, the confession may be admissible

1

where the trial judge finds the delay reasonable after considering "the means of transportation and distance to be traveled to the nearest available magistrate judge[.]" *Id.*

According to Defendant, he was arrested on Tuesday, February 3, 2015, at 5:22 pm. He was driven to police headquarters in downtown San Diego, California at 6:00 pm and placed in a holding cell. He was given *Miranda* warnings at 11:34 pm—six hours and twelve minutes after he was arrested. He was interviewed for approximately one hour and twenty minutes. He confessed sometime between 11:34 pm and 1:00 am.

The confession took place outside of the six hour safe harbor here because the delay was not due to means of travel or distance to the magistrate judge. Thus, the Court must determine whether the delay was "unreasonable or unnecessary." *Corley v. United States*, 556 U.S. 303, 322 (2009).

B. Reasonable Delay

Under Federal Rule of Criminal Procedure 5(a), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless the statute provides otherwise."

The *McNabb-Mallory* rule generally renders inadmissible any confession made during detention that violates the defendant's right to prompt presentment provided in Rule 5(a). *Corley*, 556 U.S. at 308. If "the confession occurred before presentment and beyond six hours, . . . the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed." *Id.*

There are three categories of reasonable delays apart from transportation, distance, and availability of a magistrate judge: (1) delays for humanitarian reasons; (2) delays due to the unavailability of government personnel and judges necessary to completing the arraignment process; and (3) delays necessary to determine whether the suspect should be criminally charged. *United States v. Valenzuela-Espinoza*, 697 F.3d 742, 752 (9th Cir. 2011). Courts should be "careful not to overextend *McNabb-Mallory*'s prophylactic rule

2

in cases where there [is] a reasonable delay unrelated to any prolonged interrogation of the arrestee." *United States v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009) (holding the delay due to shortage of personnel necessary to process defendant and determine whether he should be charged was reasonable).

In *McNabb v. United States*, 318 U.S. 332 (1943), two defendants were arrested in the middle of the night and were questioned for two days before they were brought before a judge and before formal charges were brought against them. A third defendant was detained and questioned continuously for nearly six hours. It was only the incriminating statements made during this prolonged questioning that supported a charge and conviction against them. The *McNabb* court held that the police detention of the defendants beyond the time that a judge was readily accessible constituted "willful disobedience of law."

In *Mallory v. United States*, 354 U.S. 449 (1957), the court suppressed a confession made seven hours after arrest where the police questioned the suspect for hours, all the while they were nearby many judges and could have presented the defendant.

After considering the *McNabb-Mallory* line of cases, this is not the type of case that the *McNabb-Mallory* rule was designed for. Here, there is little-to-no connection between Defendant's voluntary statement and the delay in presentment. Defendant was arrested at 5:22 pm on Tuesday, February 3; the six hour period from the time of his arrest ended at 11:22 pm; police began interviewing Defendant at 11:34 pm; and Defendant confessed sometime between 11:34 pm and 1:00 am. According to the Government, Defendant was then scheduled for the first available booking window at MCC, which turned out to be Wednesday, February 4 at 5:30 pm (approximately sixteen hours after his interview ended). Because the federal magistrate judge on duty that week held arraignment hearings at 2:00 pm, Defendant was brought before the magistrate judge at the earliest time possible after booking, specifically Thursday, February 5 at 2:00 pm.

There is no evidence that a federal magistrate judge or a state or local judge was available for Defendant's initial appearance between the time of Defendant's arrest and his confession. And, there is no indication that interrogation continued during the additional sixteen hours that he waited to be booked at MCC. Defendant contends he could have been brought before the federal magistrate judge one day sooner, *i.e.*, on Wednesday at 2:00 pm. But that would have made no difference. The confession was obtained prior to the normally scheduled 2:00 pm time for arraignments. Defendant's confession was not obtained after an unreasonable delay. The confession was not a product of the delay. The delay in presentment was caused by the unavailability of an earlier booking window at MCC, rather than any intentional delay by the arresting agents.

The delay in presentment therefore was caused by the unavailability of other governmental personnel who were necessary for completing the arraignment process, and was completely unrelated to Defendant's interrogation. As such, the delay was not unreasonable nor unnecessary. The confession is admissible. Accordingly, the Court **DENIES** the Motion to suppress the confession.

## II. Defendant's Motion to Suppress Laptop

Defendant also moves to suppress evidence from a laptop computer found in Victim 2's hotel room, arguing that it was illegally seized. (Doc. No. 32.)

Under the plain-view doctrine, an officer may lawfully seize evidence without a warrant if the officer lawfully arrived at the place where the evidence could be plainly viewed, and the incriminating character of the evidence was immediately apparent. *Horton v. California*, 496 U.S. 128, 135-36 (1990).

According to the Government's Opposition, on December 16, 2014, Detective McGilvray, posing as a client interested in a massage, was invited into a hotel room by Victim 2. When Victim 2 agreed to perform sexual acts for money, Det. McGilvray placed her under arrest. During the arrest, the laptop computer was sitting on the desk beside the hotel bed, and visible to anyone in the room. Victim 2 said she had permission

to use it to play music for customers and informed agents that the laptop was used to post her backpage.com massage ads on the internet. The agents then seized the laptop.

Here, the detective was lawfully in the hotel room and the laptop was in plain view. At that time, Victim 2 identified the laptop as one used to commit crimes. The incriminating character of the laptop was then readily apparent, and the detective could lawfully seize it. The Court therefore **DENIES** the Motion to suppress evidence from the laptop.

### III. Defendant's Motion to Suppress Prior Identifications

Defendant also asks this Court to suppress the identifications made by Victims 1 and 2 because Defendant contends the identifications were the results of an impermissible suggestion. (Doc. No. 32.)

A prior out of court identification should be suppressed only where, after considering the totality of the circumstances, "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 385 (1968). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 200 (1972) (holding there was no substantial likelihood of misidentification where police arranged for a show-up, brought the defendant to the victim, and required him to say "shut up or I'll kill you" seven months after the date of the crime).

Here, according to the Government's Opposition, on November 30, 2014, police responded to a call from Victim 1 who reported that she had been held against her will at the Days Inn for three days. Victim 1 explained that she responded to an employment advertisement on a Russian social media website. Defendant discussed the specifics of the "massage" position that he had available. Victim 1 agreed to take the position and

booked a one-way flight from Miami to San Diego. Defendant apparently picked Victim 1 up from the airport and told her that she would have to have sex with customers. Defendant advertised Victim 1's services on backpage.com and demanded that Victim 1 pay Defendant $400 per day. Defendant said he was always watching Victim 1, and when Victim 1 told him she wanted to leave, Defendant became aggressive and shoved her head into a mirror. Defendant took Victim 1's cell phone and money. When she ran to the lobby, the motel clerk called the police. When police arrived, they showed Victim 1 a photograph of Defendant and asked if the man in the picture was the man who she was talking about. She said yes.

On December 10, 2014, Detective McGilvray saw a new posting on backpage.com with the same contact phone number as used in Victim 1's backpage.com ads. He then posed as a client seeking a massage and scheduled an appointment. The detective went to the Western Inn for the "appointment" and was invited into a hotel room by Victim 2. She offered to perform sexual acts in exchange for money. She was then arrested. Victim 2's story was similar to that of Victim 1. She said she responded to an employment ad on the same Russian social media website as did Victim 1. Victim 2 was contacted by Defendant, whom she met in person to discuss the position. Victim 2 then agreed to take the position, and was told she must pay Defendant $400 per day. When she could not pay, Defendant forced her to have sex with him. After her arrest, Victim 2 was shown a picture of Defendant and she identified him.

Although showing each victim a single photograph was suggestive, it was not impermissible. *But see Simmons*, 390 U.S. at 384 (noting that the potential for a misidentification increases where police show the witness a photograph of a single individual who fits the general description of the person the witness described). Victim 1 and Victim 2 had ample opportunity to familiarize themselves with Defendant's appearance. Victim 1 was held in a hotel room with Defendant for three days. Victim 2 met with Defendant to discuss the "position" before being put up in a hotel room. Victim 2 also acted intimately with Defendant. There is no evidence that either of the victim-

witnesses were incapacitated in any way during their interactions with Defendant. In addition, Victim 1 identified Defendant the same day that she saw him. Although the record does not provide how certain the victims were when they identified the Defendant or how they described Defendant before they were shown the photograph, such information does not undermine the reliability of the photo identifications made here.

From the information before the Court, it is apparent that the victims would not have been easily persuaded or misguided by the showing of a single photograph. The Court therefore **DENIES** the Motion to suppress prior identifications.

### IV. Defendant's Motion for Supplemental Discovery

Defendant asks that the Government produce the entire A-files of Victims 1, 2, and 3, so that Defendant can inspect them. (Doc. No. 28.) Defendant contends that the A-files are material to presenting his defense, because they will tend to show that the victims have substantial motive to lie, *i.e.* to accuse Defendant of these crimes in order to secure a visa allowing the victims to remain in the United States.

Federal Rule of Criminal Procedure 16(a)(1)(E) requires the Government to produce to the defendant any item that is material to preparing his defense. Under *Giglio v. United States*, 405 U.S. 150, 154 (1972), where a witness' credibility is critical to the case, the Government must produce anything that might negate the witness' credibility.

Here, it is alleged that the victims remained in the United States illegally by overstaying student or work visas. In addition, the victims were found engaging in prostitution. If any of this information is true, the victims are likely deportable. However, if they assist in the prosecution of Defendant, the victims might be eligible for a U-visa or S-visa. Their testimonies against Defendant are certainly important. Further, their credibility will likely play a significant role in the case.

Defendant is entitled to any impeachment evidence that might be found in the witnesses' A-files, but it is not necessary to compel the Government to produce the entire A-files. *See United States v. Caza*, Crim. No. S-06-0058, 2009 WL 465619, at *1-2 (E.D. Cal. Feb. 24, 2009) (government met its obligation under *Brady* and *Giglio* after

producing approximately 30 out of hundreds of pages from a witness' A-file). The Government agrees that it must provide impeachment evidence, and offers to review the A-files and produce such evidence to Defendant.

The Court therefore **GRANTS in part** Defendant's Motion to compel production of the A-files. The Government is **ORDERED** to review the A-files and produce to Defendant any impeachment evidence within **14 days** of the date this Order is filed.

### V. Defendant's Motion to Compel Discovery

As of March 2015, Defendant received two discs from the Government, which included several hundred pages of discovery. Defendant, however, believes he has not received all discovery, and moves to compel the Government to produce all available discovery. (Doc. No. 20.) The Government did not file an Opposition.

Due to the more recent and more specific motions, it appears Government has produced all available discovery except the requested A-files. Accordingly, Defendant's Motion to Compel is **DENIED as moot**.

### VI. Government's Motion for Reciprocal Discovery (Doc. No. 19)

The Government filed this motion seeking to compel Defendant to produce any relevant information pursuant to Federal Rule of Criminal Procedure 16(b). Defendant did not file an Opposition. As specific discovery motions were subsequently filed, it appears the Government does not seek anything from Defendant that it does not already have. The Court therefore **DENIES** the Motion **as moot**.

### VII. Defendant's Motion for Leave to File Further Motions (Doc. Nos. 32, 28)

Defendant asks for leave to file further motions if needed. (Doc. Nos. 32, 28.) The Government does not oppose. The Court **GRANTS** Defendant leave to file further motions, so long as the new motions are based upon newly produced evidence.

Dated: July 7, 2015

HON. ROGER T. BENITEZ
United States District Judge